K23AADUPC                        Conference

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

             v.                            19 CR 444 (RMB)

JOHN PIERRE DUPONT,

                Defendant.

------------------------------x

                                           New York, N.Y.
                                           February 3, 2020
                                           11:30 a.m.

Before:

                  HON. RICHARD M. BERMAN,

                                           District Judge

                          APPEARANCES

GEOFFREY S. BERMAN
     United States Attorney for the
     Southern District of New York
ALEX ROSSMILLER
     Assistant United States Attorney

ZAWADI BAHARANYI
     Attorney for Defendant Dupont

1              (Case called)
2              THE COURT:  Please be seated.
3              So, I take it we don't have Mr. Dupont here and maybe
4     could just for the record hear from defense counsel, how he is
5     doing and where he is just so we know.
6              MS. BAHARANYI:  Yes, your Honor.
7              Zawadi Baharanyi, Federal Defenders, on behalf of Mr.
8     Dupont.
9              He is currently at Kingsbrook Jewish Medical Center.
10    That's where he's been since about mid-November, your Honor.
11    In terms of how he is doing, we have limited records.  At this
12    time, we've only received sort of records from MCC based off --
13    and those records are really reporting, they are conversations
14    with Kingsbrook, although, not wholly, not completely.  My
15    understanding from MCC records and from my visit with him, he
16    is still fairly frail.  He lost a tremendous amount of weight.
17    Although, I believe some of that he is starting to gain some of
18    that back.  I think more concerning is there's the possibility
19    that he has leukemia.  He is currently awaiting the results of
20    a bone marrow to confirm that, to confirm or deny it.
21             Also, there was recently a mass found in, I guess the
22    area around his throat, still awaiting results on that.
23    Generally, he is a older gentleman.
24             THE COURT:  I forget.  How old is he?
25             MS. BAHARANYI:  Mr. Dupont is 83-years-old.  I'm

1  sorry.  He is 81-years-old.  He is turning 82 this year.  So,
2  part of, some of his difficulties are as well are related to
3  age but there do seem to be some potentially serious health
4  issues that we are trying to get information on, your Honor.
5  We did subpoena Kingsbrook a few weeks ago, asked them to
6  return records at the beginning of last week, have followed up
7  with them and still they've been quite unresponsive.  We did
8  not want to raise that with your Honor to see if there might
9  being some added pressure the Court could put on them.  We
10 would like to see those records.  I know that could affect how
11 this case goes forward.  But those are the updates that we have
12 so far, somewhat limited information because of the inability
13 to get much information from the hospital.
14          THE COURT:  You don't speak to him?
15          MS. BAHARANYI:  I have seen him.  So, I could tell you
16 in terms of how he looks, he is -- your Honor, I don't know if
17 you recall seeing him in November.  He was fairly thin at the
18 time.  He lost more weight since then.  He lies in bed pretty
19 much the entire time, has sort of very limited movement.  My
20 understanding that he is seeing a psychologist about every day
21 or every other day.  And part of the records that we want are
22 those records as well from Kingsbrook.  But he seems to be an
23 older gentleman with health issues from my layman's perspective
24 and just to fill-in some of the gaps in information that we
25 really do want and need those records from Kingsbrook.

1           THE COURT:  OK.

2           MS. BAHARANYI:  I wish we had a more complete update
3     but we are still waiting.

4           THE COURT:  Sure.

5           MR. ROSSMILLER:  Your Honor, I think that's generally
6     consistent with the government's understanding as well.  I
7     should say that Ms. Baharanyi's been in touch with the
8     government.  We have had I think a productive open line of
9     communication about Mr. Dupont's status.  It does seem that
10    there are some tests that are outstanding for him.

11          But just to step back sort of on the flip side it
12    general, Mr. Dupont was arrested originally in March of last
13    year.  So, coming up on a year ago.  He then, I think in
14    particularly spry fashion, managed to evade the government
15    after jumping bail for approximately seven months.  He took a
16    number of steps that were fairly sophisticated.  He drop his
17    phone.  He got a new phone number.  He traded in his money for
18    gold.  He drove to different areas.  He rented a U-Haul.  Told
19    the U-Haul he would be returning it in Seattle and then some
20    weeks later dumped it on the roadside in Dallas.  He was pretty
21    cognitively fit during that time and certainly moving about.  I
22    understand he does have legitimate health problems and
23    potentially serious problems that are being tested for.  It's
24    also entirely possible he is unhappy to be incarcerated but we
25    do think this case is ready to be scheduled out.

1    I understand there may be things that affect how the
2    case potentially resolves itself.  Certainly, if defense
3    counsel is looking to put in a submission to the government,
4    those types of things are ripe now.  So, the government was
5    hearing November, asked the Court for a schedule for motions
6    and trial, the Court wanted the government to complete
7    discovery before we did that.  So, the government has now
8    substantially completed discovery.  We've produced I think any
9    motions that would -- I'm sorry -- we've produced the sole
10   warrant that I think would give rise to a motion.  I think I
11   believe in December we substantially completed discovery two
12   weeks ago.
13   So, this case is trial ready, your Honor, and we'd
14   like to keep moving forward without prejudice of course to
15   reconsidering if there is something that prevents were
16   Mr. Dupont from meaningfully contributing to his own defense or
17   if there is a resolution.  But otherwise, I think we've been
18   spending some months sort of treading water and we'd like to
19   move forward.
20   MS. BAHARANYI:  I think his health issues are
21   documented.  I think we are still in the process of getting
22   some of that documentation.  But we know from what we have
23   received from MCC is that he is ill enough that he's been
24   hospitalized for now at this point two months.
25   We are asking for the ability to come back, your

Honor.

THE COURT:  So, there would almost certainly be a diagnosis before is somebody is hospitalized for two months stay; no?

MS. BAHARANYI:  So, part of his hospitalization seems to be testing to see what exactly he does suffer from.  I think he does have diagnoses related to diabetes, to kidney function.

THE COURT:  If one isn't feeling well and you go to the hospital, it's unusual that you would stay there for two months if you don't have some serious workup.  Who funds the hospitalization?

MS. BAHARANYI:  Don't quote me on this, your Honor.  I would believe MCC or the government.  I mean, he was sent there from the MCC.

THE COURT:  Is that right?  Is he in a prison ward?

MR. ROSSMILLER:  I don't know specifically the answer to that question, your Honor.  I assume he is under some sort of guard, particularly, having jumped bail previously.

MS. BAHARANYI:  Your Honor, he is under 24/7 U.S. Marshal Service watch.

MR. ROSSMILLER:  It may be more straightforward for an elderly individual to be sort of overseen in a hospital setting than in a prison setting.  I don't know the specific details of that.  We have been in touch with BOP about his care and we understand that he was initially treated for I think the term

1    was failure to thrive and then was undergoing some testing.  I

2    don't know if there is a schedule to have him go back in.

3            But in any event, I think, certainly, the government

4    has no problem with defense counsel getting this information

5    but it doesn't have any bearing on the charges that he's faced

6    with or the trial or any other substantive --

7            THE COURT:  It does have a bearing for me on setting a

8    trial date or in taking the next step.  I wouldn't do it unless

9    I knew what the evaluation is and what the prognosis is and

10   when his doctors believe he could be released.  All that

11   information I would want before I'd make any next step.

12           MR. ROSSMILLER:  A couple things.  The first is, my

13   understanding is until defense counsel requested the waiver of

14   Mr. Dupont's presence was that the marshals would have been

15   able to and were expecting to produce him from the hospital.

16   So, there is nothing that prevents him from being in court

17   other than sort of his health convenience comfort level and I

18   don't say that in a negative fashion, your Honor, but it wasn't

19   necessary for him to be here today but he certainly could have

20   been, based on my understanding from the marshals.  So, any

21   motions and trial date would be weeks and almost certainly

22   months in the future.  We may have more information but I would

23   prefer not to do and would ask the Court to avoid is we were

24   here in November.  There was a question about his health.  We

25   waited three months to come back.  There were more questions

about his health.  I would prefer, if we can avoid it, to not be setting months out trial dates months from now in the hope that everything will be resolved quickly.  So, I think the government would have no problem adjourning dates but just to get things rolling in terms of reaching a conclusion, it may be helpful to have some dates.

THE COURT:  Yes.  One of the rare occasions where I disagree with you.

MR. ROSSMILLER:  Thank you, your Honor.

THE COURT:  Well, really it's too amorphous to me. And there must be a diagnosis.  There must be a record.  There must be an explanation for why someone who is a prisoner is in a hospital for two months and stays there.  Usually, they want the bed or you know.  So, there has to be some medical explanation and I also would like some medical prognosis about when someone could with his condition whatever it is, could safely be tried or whatever or when are they thinking of returning him to the jail?  It is quite unusual.  Two months is a pretty long time for a hospital stay.

Anyway, as soon as you get me that and that could be in the form of a written communication letter supported by documentation from the hospital, I'd be ready to go.  So, when that information is available I would ask you both to meet and confer and come up realistically with a schedule for this case.

MR. ROSSMILLER:  That sounds fine, your Honor.

1           Thank you.

2           THE COURT:  I will set an interim date just so I don't

3   lose track of things.  I'll set a sort of a placeholder date of

4   April 7 at 9:30 for a status but I'm happy to try and

5   accelerate that date or have a more realistic schedule based on

6   our conversation and what you find out.

7           But in the meantime, is there speedy trial issue or

8   application that takes us to April 7?

9           MR. ROSSMILLER:  Yes, your Honor.  The government asks

10  to exclude speedy trial time until April 7 in the interests of

11  justice.  As I mentioned, the government has completed

12  discovery.  That period of time will allow defense counsel to

13  continue to review discovery for the parties to have

14  discussions about a possible disposition.

15          THE COURT:  I'm going to find under 18 U.S.C. Section

16  3161 that the request for a adjournment joined in my both sides

17  to and including April 7, 2020, is appropriate and warrants

18  exclusion of the adjourn time from speedy trial calculations.

19          I further find that the exclusion is designed to

20  prevent any possible miscarriage of justice, to facilitate

21  these proceedings including, specifically, a further

22  investigation and report to the Court about Mr. Dupont's

23  physical condition and his physical condition prognosis and to

24  guaranty effective representation and preparation by counsel

25  for both parties.  And thus, the need for exclusion and the

```
K23AADUPC                 Conference
```

1  ends of justice outweigh the interests of the public and the

2  defendant in a speedy trial pursuant to 18 U.S.C. Section

3  3161(H)(7)(A) and (B).

4     So, I'll be on the lookout for some sort of maybe a

5  joint letter or letter from one of you indicating that the

6  information that we discussed and what we both think about the

7  next steps and the timing in this case.

8     MR. ROSSMILLER:  Will do that, your Honor.

9     Thank you

10    MS. BAHARANYI:  Just one last issue.  I think we did

11 subpoena Kingsbrook.  We think it might be helpful to have a

12 court ordered or court signed subpoena.  If our office could

13 request one from you so that that might speed up the process

14 for us getting those documents?

15    THE COURT:  Sure.  I'm happy to sign-off.  The

16 government may be able to assist you in the interim.  But if

17 you submit a subpoena for me to so 'so order', I'll be happy to

18 do it.

19    MS. BAHARANYI:  Thank you, your Honor.  We'll do that

20 this week.

21    THE COURT:  Thanks a lot.

22    MR. ROSSMILLER:  Thank you, your Honor.

23    (Adjourned)

24

25